## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| DERWIN STEWART, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. 05-3238-WEB |
| | ) | |
| RAY ROBERTS | ) | |
| El Dorado Correction Facility | ) | |
| & | ) | |
| PHIL KLINE | ) | |
| Kansas Attorney General, | ) | |
| | ) | |
| Respondents. | ) | |

### MEMORANDUM AND ORDER

Pursuant to 28 U.S.C. § 2254, petitioner Derwin Stewart seeks relief from his Kansas state

conviction. Petitioner argues his sentence is unconstitutional and requests to be appointed counsel, have

an evidentiary hearing and to proceed in forma pauperis.

### I. FACTS

The incident took place outside the home of the victim, Sandra Mason. She lived with her husband,

Will Perkins, their three children and two other friends. Petitioner was at the victim's house but was told

to leave. The victim, Petitioner and others went outside, where an argument ensued. As Petitioner left in

his car, he struck the victim twice, killing her and almost hit another person.

### II. PROCEDURAL HISTORY

In 1997, Petitioner was convicted of reckless second degree murder and aggravated assault and was sentenced to 166 months. Petitioner directly appealed his conviction to the Kansas Court of Appeals (KCA). On direct review, Petitioner alleged that his due process rights were violated because the jury viewed the crime scene outside his presence and the trial court erred by failing to give a lesser included offense instruction. These contentions were denied. *Stewart v. Kansas*, No. 80,287 (February 4, 2000) (unpublished). The Kansas Supreme Court denied Petitioner's request for review on May 2, 2000.

Petitioner filed a collateral appeal pursuant to Kan. Stat. Ann. § 60-1507 on June 1, 2000. In that petition he alleged ineffective assistance of counsel because his counsel failed to investigate additional facts and witnesses; his counsel was prejudiced; and his counsel violated his Fifth Amendment rights by advising him not to testify and allowing taped incriminating statements into evidence without comment by Petitioner. The trial court denied this appeal and the KCA affirmed that decision. *Stewart v. Kansas*, No. 90,137 (February 20, 2004) (unpublished). The KSC denied Petitioner's request for review on May 25, 2004. Petitioner filed this request for habeas relief on May 26, 2005. The State filed a response but Petitioner filed no traverse.

## III.  EXHAUSTION.

Prior to ruling on the merits of Petitioner's claims, the Court must first determine if they have been exhausted at the state court level. "The exhaustion requirement is satisfied if the federal issue has been properly presented to the highest state court, either by direct review of the conviction or in a postconviction attack." *Dever v. Kansas State Penitentiary*, 36 F.3d 1531, 1534 (10th Cir. 1994); 28 U.S.C. § 2254. In the case *sub judice*, Petitioner raises the following claims that were not first presented to the state courts:

1) his Fifth Amendment rights were violated because his taped interview was entered into evidence and the statements on the tape were involuntary because he was drunk; 2) the transcript was not checked for accuracy; 3) the interview violated his Miranda rights; 4) the trial violated the rules prohibiting hearsay; 5) he was not present when the jury listened to his taped statements during deliberation; 6) the court violated his right to cross examine witnesses and 7) the court and prosecution misstated the law. (Doc. 2 at 3, 5, 6, 9, 21-23, 25, 42, 47, 50, 53, 60). Additionally, Petitioner presents ineffective assistance of counsel arguments that were not made before Kansas courts. Petitioner alleges that his trial counsel was ineffective because: 1) he made a bad closing argument; 2) his cross-examinations were ineffective; 3) he did not object to Petitioner's taped statements being played for the jury; and 4) his counsel did not uphold the duty of loyalty to his client. (Id. at 5, 29, 42, 59-60).

"[T]he Supreme Court has held that if a petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred, the claims are considered exhausted and procedurally defaulted for purposes of federal habeas relief." *Thomas v. Gibson*, 218 F.3d 1213, 1221 (10th Cir. 2000); *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991).

For this Court to hear Petitioner's new claims, he would have to present them first to Kansas courts; however, Kansas courts would find these claims untimely. The Kansas statute governing collateral motions states:

> (1) Any action under this section must be brought within one year of: (i) The final order of the last appellate court in this state to exercise jurisdiction on a direct appeal or the termination of such appellate jurisdiction; or (ii) the denial of a petition for writ of certiorari to the United States Supreme Court or issuance of such court's final order following granting such petition.
> (2) The time limitation herein may be extended by the court only to prevent manifest injustice.

Kan. Stat. Ann. § 60-1507(f).

The time limit for raising preexisting claims in collateral motions begins to run on July 1, 2003, the date the statue became effective. *Hayes v. State,* 34 Kan. App. 2d 157, 158, 115 P.3d 162 (2005). Petitioner's claims preexist July 1, 2003; consequently, Petitioner's failure to present these claims before any Kansas court results in those claims being procedurally defaulted. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999). The Court may not consider procedurally barred claims if the bar rests upon an independent and adequate procedural ground. *Thomas*, 218 F.3d at 1221.

"A procedural rule is independent if it is based upon state law, rather than federal law. To be adequate, a state's procedural rule used to bar consideration of a claim must have been firmly established and regularly followed by the time as of which it is to be applied." *Anderson v. AG*, 342 F.3d 1140, 1143 (10th Cir. 2003) (internal quotations and citations omitted).

The period of limitations in Kan. Stat. Ann. § 60-1507(f) is a state law so it qualifies as independent. This law is firmly established as the Kansas legislature amended the statute in 2003 to add time limitations and the KCA has applied it to bar untimely collateral appeals. *Hayes v. State,* 34 Kan. App. 2d 157, 158, 115 P.3d 162 (2005). Because the state procedural bar is independent and adequate, the Court may not consider Petitioner's new claims unless he can demonstrate cause and prejudice or a fundamental miscarriage of justice. *Thomas*, 218 F.3d at 1221.

Petitioner fails to show either a miscarriage of justice or cause and prejudice for the default. The Court does not find a miscarriage of justice as Petitioner does not provide any facts that would show actual innocence. *See Calderon v. Thompson*, 523 U.S. 538, 559 (1998) (The miscarriage of justice exception is concerned with actual as compared to legal innocence...To be credible, a claim of actual innocence must

be based on reliable evidence not presented at trial).

Petitioner also fails to show cause for the default.  He provides no explanation for failing to make these arguments before Kansas courts.  The Court holds that Petitioner's claims as described in this section are considered exhausted and procedurally defaulted.

## IV.  STANDARD OF REVIEW.

The Court's standard of review is set out in the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), which "circumscribes a federal habeas court's review of a state-court decision." *Lockyer v. Andrade*, 538 U.S. 63, 123 S. Ct. 1166, 155 L. Ed.2d 144, 154 (2003).  Where a state court has adjudicated a claim on the merits, the Court may not grant a writ of habeas corpus unless the adjudication:

> (1) resulted in a decision that was contrary to, or involves an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Under § 2254(d)(1), "the only question that matters," is "whether a state court decision is contrary to, or involved an unreasonable application of, clearly established Federal law." *Lockyer*, 155 L. Ed. 2d at 155.  In other words, if § 2254(d)(1) applies, the Court need not conduct a de novo review of the state court decision.  *Id.*

Clearly established Federal law means, "the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision."  *Id.*  Determining what the Supreme Court has clearly established is usually "straightforward."  *Id.*  First, a state court's decision is *contrary* to such

law "if the state court applies a rule different from the governing law set forth in our cases, or if it decides

a case differently than we have done on a set of materially indistinguishable facts." *Bell v. Cone*, 535 U.S.

685, 694, 122 S. Ct. 1843, 152 L. Ed.2d 914, 926 (2002).  Second, the state court's *application* of

clearly established Federal law is *unreasonable* "if the state court correctly identifies the governing legal

principle from our decisions but unreasonably applies it to the facts of the particular case."  *Id.*  The

application must be unreasonable, not just incorrect.  *Id.*  "Avoiding these pitfalls does not require citation

of [Supreme Court] cases–indeed, it does not even require awareness of our cases, so long as neither the

reasoning nor the result of the state-court decision contradicts them."  *Patton v. Mullin*, 435 F.3d 788,

794 (10th Cir. 2005) (*citing Early v. Packer,* 537 U.S. 3, 8 (2002)).

Section 2254(e)(1) requires this Court to presume the state court's factual determinations are

correct; furthermore, the prisoner bears the burden to rebut the presumption by clear and convincing

evidence. § 2254(e)(1).  The Court does not stand to correct errors of state law and is bound by a state

court's interpretation of its own law.  *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).


## V.  INEFFECTIVE ASSISTANCE OF COUNSEL

In his 62 page memorandum, Petitioner incoherently argues that his trial and appellate counsel were

ineffective for failing to protect his Fifth Amendment rights because trial counsel allowed into evidence

taped incriminating statements made by Petitioner and appellate counsel failed to raise this issue.  (Doc. 2

at 14, 59).

Using Kansas state law, the KCA denied these claims.  The KCA cited the following Kansas

standard regarding ineffective assistance of counsel:

Before counsel's assistance is determined to be so defective as to require reversal of a conviction, defendant must establish (1) counsel's performance was deficient, which means counsel made errors so serious that counsel's performance was less than that guaranteed by the Sixth Amendment, and (2) the deficient performance prejudiced the defense, which requires showing counsel's errors were so serious they deprived defendant of a fair trial.

*State v. Stewart,* No. 90,137 at 4 (*citing State v. Kirby,* 272 Kan. 1170, 1194, 39 P.3d 1 (2002)).

This law is at least as favorable as the familiar *Strickland* standard under Federal law. *Strickland v. Washington,* 466 U.S. 668 (1984). Consequently, the Court will analyze Petitioner's claims to determine if the Kansas result was an unreasonable application of Federal law.

To establish a claim of ineffective assistance of counsel, Petitioner must show that his counsel's performance fell below an objective standard of reasonableness and that the deficient performance prejudiced his case. *Strickland*, 466 U.S. at 687-688. To establish prejudice, Petitioner must show that there is a reasonable probability that, but for counsel's deficient performance, the result of the trial would have been different. *Id.* at 694.

Petitioner claims his counsel was ineffective by allowing a tape containing incriminating statements to be played to the jury without obtaining a waiver of Petitioner's Fifth Amendment rights. Petitioner's statements at trial conflict with this allegation. The following colloquy in court occurred between defense counsel and Petitioner outside the presence of the jury.

Q. Mr. Stewart, you recall being interviewed by Detective Gouge on December 14, 1996?
A. Yes.
Q. Now, just prior to that time, you were interviewed by Detective Hennessey. Do you recall that?
A. Yes.
Q. And at the time of that interview, Detective Hennessey went through with you your Miranda warnings; and you received a written form that was presented to you that you signed and acknowledged that you understood your rights to have counsel and those other rights contained on the form. Do you recall that?

A.  Yes.

Q.  And then at near the conclusion of that interview with Detective Hennessey, you told him that you didn't want to talk with him anymore.  Do you recall that?

A.  Yes.

Q.  And then a short time later, Detective Gouge came into the interview room; and you indicate to him that you were still willing to talk.  Isn't that correct?

A.  Yes.

Q.  And there were no promises or threats made to you about whether or not you should continue to talk with Detective Gouge, were there?

A.  No.

Q.  And it's your testimony today, isn't it, sir that this statement that you gave to Detective Gouge was given freely, knowingly, intelligently and voluntarily.  Is that correct?

A.  Yes.

Q.  And by virtue of the Court allowing that statement to be played to the jury in this trial, you understand that you're giving up any rights that you might have with respect to asking the Court not to allow that statement into evidence, don't you?

A.  Yes.

Q.  And you're also willing to give up your right to appeal from that decision that this statement be admitted in evidence against you.  Isn't that correct?

A.  Yes.

Q.  In fact, you understand that there are certain portions of that statement that tend to incriminate you, meaning that they may lead the jury to conclude that you're guilty by virtue of the statements that are contained in that interview.  You understand that, too don't you?

A.  Yes.  I do.

Q.  And you've had an opportunity to review both Detective Hennessey's transcript and Detective Gouge's transcript?

A.  Yes.

Q.  And you feel like you're doing this because it's in your best interests?

A.  Yes, I do.

Q.  You don't have any hesitation about that?

A.  None.

Q.  And we've talked about it at length, haven't we?

A.  Yes.

(R., Vol. 6 at 267-269).

This conversation shows Petitioner made the decision not to contest the voluntariness of his statements on the tape and he was aware the tape would be played to the jury.  The colloquy shows that he was fully aware of the incriminating statements in the tape but he wanted the tape played because it was

-8-

in his best interest.  The colloquy shows counsel and Petitioner spoke at length about this trial strategy and the ultimate decision was Petitioner's.

Even if Petitioner's decision was the result of counsel's advice, "strategic or tactical decisions on the part of counsel are presumed correct, unless they were completely unreasonable, not merely wrong." *Bullock v. Carver*, 297 F.3d. 1036, 1047 (10th Cir. 2002).  Unfortunately, the transcript of the taped interview between Petitioner and Detective Gouge is not part of the record; hence, it is impossible to divine if it was a reasonable strategy to enter it into evidence.

Even assuming *arguendo* that the decision to enter the interview into evidence was completely unreasonable, to show ineffectiveness Petitioner must also show that "the decision reached by the jury had a reasonable probability of being different absent his counsel's alleged error[]..." *United States v. Jones*, 852 F.2d 1285, 1277 (10th Cir. 1988).  When determining if Petitioner was prejudiced, the Court "must consider the totality of the evidence before the judge or jury." *Strickland*, 466 U.S. at 695.  "Moreover, a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." *Id.* at 696.

In this case, there is sufficient factual support for Petitioner's conviction without incriminating statements in the interview.  Will Perkins was the husband of the victim and witnessed the incident.  He gave a detailed account about how Petitioner struck the victim with his car, backed up and struck her again. (R., Vol. 6 at 51-53, 62-64).  He stated that Petitioner was laughing and smiling when striking the victim with his car.  (Id.).  Perkins also stated that Petitioner attempted to run over him and another person.  (Id. at 54, 83, 84).  Marlin Rice, Petitioner's cousin, testified that Petitioner hit the victim pinning her against another car.  (R., Vol. 8 at 20).  Rice also testified that Petitioner was angry at him and drove the car fast

in his direction and he had to jump out of the way. (Id. at 19). Another witness, Dale Tildan, stated that Petitioner's car was facing the alley and there was nothing blocking it. (Id. at 66). Tildan stated that Petitioner backed up and then drove forward striking the victim. (Id. at 67). He then stated while the victim was using the bumper of a nearby car to try to get up, Petitioner backed up and drove forward crushing the victim against the car. (Id. at 68). Tildan stated that Petitioner struck her across the chest area. (Id). Another witness, Corona Davis testified that Petitioner intentionally hit the victim once, backed up and struck her again in the chest which pinned her against another car for a period of time. (R., Vol 6 at 103-107, 113-114). She testified that Petitioner was smiling and appeared to be enjoying what he was doing to the victim. (Id. at 105). Before dying, the victim told Davis that her chest hurt. (Id. at 107). A coroner subsequently testified that the death was blunt force trauma to the chest. (Id. at 229). Pamela Venemen stated that Petitioner spoke to her after the incident and said "I hit the fat bitch." (Id. at 191).

Consequently, even if Petitioner's counsel had objected to the tape and prevented its entry into evidence, there was a substantial amount of evidence to support the conviction. Petitioner has failed to show that the jury would have decided the case any differently had the interview not been entered into evidence. Because Petitioner cannot show prejudice, the decision of the KCA to deny Petitioner's ineffective assistance of counsel claim was not an unreasonable application of federal law.

Finally, Petitioner's contention that appellate counsel failed to raise this claim on appeal is contrary to the record. (Doc. 2 at 59). The record shows appellate counsel raised this issue on Petitioner's state collateral appeal. The KCA addressed and denied this claim. *Stewart v. Kansas*, No. 90,137 at 6-9 . Consequently, Petitioner's appellate counsel on collateral appeal was not ineffective.

## VI.  THE JURY, PETITIONER AND THE CRIME SCENE

Petitioner next argues that his absence during the jury view of the crime scene rendered his conviction unconstitutional.  (Doc. 2 at 34).  Specifically, he argues that his presence was necessary because: to point out differences between the crime scene as it existed the night of the crime and how it appeared during the jury view; to witness a disagreement among counsel at the crime scene; and to prevent the jury from drawing inappropriate inferences from his absence. (Doc. 2 at 34).  Petitioner raised this issue on direct appeal.  The KCA denied Petitioner's claim, stating:

> Stewart's only right regarding his attendance at the jury view was his constitutional due process right to a fair trial.  The jury view was important to assist the jury in evaluating the conflicting testimony of the witnesses.  Some witnesses indicated Stewart's car was parked at an angle which could account for his maneuvering back and forth in an effort to leave.  Other evidence, including Stewart's statement, indicated he had an unobstructed straight-forward exit out of the alley and on to the street, yet he purposely drove back and forth, hitting Mason and aiming at others.  Defense counsel fully explored those differences, leaving the jury to decide the facts based on the witnesses' credibility.
>
> Stewart has not shown any prejudice or how the results would have been different had he been present at the jury view.  Stewart relies upon speculation that he could have assisted counsel.  The *Snyder* Court rejected this contention, noting a defendant had nothing to gain at such a limited inspection. 291 U.S. at 108.  Under the totality of the circumstances, Stewart received a fair trial. No violation of his due process rights is shown.

*Stewart v. Kansas*, No. 80,287 at 6-7.

The Court will evaluate Petitioner's claim under *Snyder* to determine if the KCA's decision was a reasonable application of federal law.  The KCA relied correctly identified *Snyder* as the appropriate law on which to decide Petitioner's claim.  The Supreme Court has held that a defendant's absence when a jury views a crime scene is not a constitutional violation.  *Snyder v. Massachusetts,* 291 U.S. 97 (1934). While portions of *Snyder* have been overruled, the central holding of *Snyder* remains good law.  *Larson*

*v. Tansy*, 911 F.2d 392, 394 (10th Cir. 1990); *Kentucky v. Stincer*, 482 U.S. 730, 745 (1987); *Devin v. DeTella,* 101 F.3d 1206, 1209 (7th Cir. 1996)

Petitioner claims he was prejudiced because he could not point out differences between the crime scene at the jury view and the day of the crime. The *Snyder* Court directly addressed this argument, stating:

> The Fourteenth Amendment does not assure to a defendant the privilege to be present at such a time. There is nothing he could do if he were there, and almost nothing he could gain. The only shred of advantage would be to make certain that the jury had been brought to the right place and had viewed the right scene...The argument is made that conceivably the place might have been changed and in a way that would be material. In that event the fact would be brought out by appropriate inquiry. There could be inquiry of witnesses in court and of counsel out of court. Description would disclose the conditions at the view, and the defendant or his witnesses could prove what the conditions were before.

*Snyder*, 291 U.S. at 108.

Given the reasoning in *Snyder*, the KCA's rejection of Petitioner's claim was not an unreasonable application of federal law.

Petitioner also claims he was prejudiced by an altercation between counsel at the crime scene and by possible negative inferences the jury could presume from his absence. While these arguments were not specifically addressed by *Snyder*, the case did give a general test to be used to evaluate a defendant's absence from a crime scene view. "[T]he presence of a defendant is a condition of due process to the extent that a fair and just hearing would be thwarted by his absence, and to that extant only." *Id.* at 107-108. Thus, Petitioner needs to show that his absence caused an unfair and unjust trial.

Petitioner argues that he was prejudiced by a comment made by the prosecutor to Petitioner's attorney during the jury view. The prosecutor stated, "[w]ell Randy, are you going to let them see this too?" (R., Vol. 8 at 36-37). This argument is meritless. First, Petitioner fails to explain how his presence

at the crime scene would have ameliorated the alleged prejudice suffered by this statement.  Second, there is nothing inherently prejudicial about the comment; therefore, it is not sufficient to cause Petitioner's trial to be unjust or unfair.  The KCA appropriately applied federal law stating that under the totality of circumstances there was no due process violation.

Finally, Petitioner argues he was prejudiced because the jury might have inferred that he was too dangerous to come to the crime scene viewing.  (Doc. 2 at 35).  The record does not provide any support for Petitioner's speculative argument.  Neither counsel had any objections to the manner in which the view of the crime scene was conducted.  (R., Vol. 6 at 157).  Moreover, the trial court clearly informed the jurors about the limited purpose of the viewing of the crime scene.  (Id. at 155-156, 164).  No record was made, no witnesses testified, no new evidence was introduced and the narration was limited to identifying landmarks referred to in the testimony.  *State v. Stewart,* No. 80, 287 at 6; Kan. Stat. Ann. § 3418; (R., Vol. 6 at 155-156, 164).

Comments by Justice Cardozo in the *Snyder* opinion are instructive when addressing speculative claims.  "There is a danger that the criminal law will be brought into contempt – that discredit will even touch the great immunities assured by the Fourteenth Amendment – *if gossamer possibilities of prejudice to a defendant are to nullify a sentence* pronounced by a court of competent jurisdiction in obedience to local law, and set the guilty free."  *Snyder*, 291 U.S. at 122 (emphasis added).  Given the limited scope of the crime scene viewing and the speculative nature of Petitioner's claim, the Court finds that Petitioner's conviction was not obtained unjustly or unfairly; consequently, the KCA's rejection of this claim was a reasonable application of federal law.

## VII.  IMPROPER JURY INSTRUCTIONS

Petitioner next argues the following: 1)  the trial court erred by failing to include a jury instruction for involuntary manslaughter under Kan. Stat. Ann. § 21-3404(c); and 2) the KCA erroneously applied the legal standard when evaluating this claim on direct appeal.[1]  (Doc. 2 at 38, 41).  The law in this Circuit states:

> The Supreme Court has never recognized a federal constitutional right to a lesser included offense instruction in non-capital cases, and neither has this court.  Our precedents establish a rule of "automatic non-reviewability" for claims based on a state court's failure, in a non-capital case, to give a lesser included offense instruction.

*Dockins v. Hines*, 374 F.3d 935, 938 (10th Cir. 2004).

The Court is unable to afford Petitioner habeas relief on his first argument for the reasons set forth above.  In Petitioner's second argument he states the KCA erroneously re-weighed the evidence when it rejected Petitioner's lesser jury instruction on direct appeal.  The KCA's alleged misapplication of state law involves a question of state law, which this Court has no power to address.  *Sallahidin v. Gibson*, 275 F.3d 1211, 1227 (10th Cir. 2002).  A federal court may grant habeas relief only if the state court error deprived the defendant of fundamental rights guaranteed by the Constitution.  *Id.*  There is no such right implicated here.  If a trial court's decision regarding jury instructions is non-reviewable then it follows that a state court's appellate review of that decision is also non-reviewable.  Moreover, the Court notes that Petitioner's argument is meritless.  The KCA did not re-weigh the evidence and decide on a competing view; rather, the KCA affirmed the trial court by reciting the substantial evidence in support of the decision

---

[1]  The statute defines involuntary manslaughter as "the unintentional killing of a human being committed...during the commission of a lawful act in an unlawful manner."  § 21-3404(c).

not to issue the lesser jury instruction in § 21-3404(c).

## VIII.  EVIDENTIARY HEARING.

Petitioner also requests an evidentiary hearing.  The law limits the authority of the court to hold an

evidentiary hearing upon Petitioner's application for relief:

> (2)  If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that –
> (A) the claim relies on –
> (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2).

The first question is whether Petitioner has "failed to develop the factual basis of a claim in State

court. *Miller v. Champion*, 161 F.3d 1249, 1253 (10th Cir. 1998).  If so, the Court must deny an

evidentiary hearing unless Petitioner satisfies one of the two exceptions elucidated in section 2254(e)(2).

*Id*.  "If, on the other hand, the applicant has not failed to develop the facts in state court, [we] may proceed

to consider whether a hearing is appropriate, or required under [pre-AEDPA] standards."  *Id*.

The record shows Petitioner requested an evidentiary hearing during the state collateral proceeding

but the trial court denied the request.  (R., Vol. 2 at 4, 7).  Where the habeas applicant has sought to

develop the factual basis underlying his petition, but a state court has prevented him from doing so, section

2254(e)(2) does not apply.  *Miller,* 161 F.3d at 1253.  Consequently, Petitioner "is entitled to receive an

evidentiary hearing so long as his allegations, if true and if not contravened by the existing factual record, would entitle him to habeas relief." *Id.*

Because Petitioner's allegations do not entitle him to relief, the Court denies his request for an evidentiary hearing.  Consequently, Petitioner is not entitled to the appointment of counsel, as this is only mandated when an evidentiary hearing has been granted.  See Rule 8 (c), Rules Governing Section 2254 Cases in the United States District Courts.


## IX. IN FORMA PAUPERIS.

Petitioner requests leave to proceed in forma pauperis.  28 U.S.C. § 1915; 28 U.S.C. § 1746; D. Kan. R. 9.1(g).  To obtain authorization to proceed in an action in forma pauperis a person must,

> ...submit[] an affidavit that includes a statement of all assets such prisoner possesses that the person is unable to pay such fees or give security therefor.  Such affidavit shall state the nature of the action, defense or appeal and affiant's belief that the person is entitled to redress.

§ 1915(a)(1)(3).

Petitioner has not submitted the affidavit as required in the above statute.  Because Petitioner has not fulfilled the prerequisites to proceed in forma pauperis; his application must be denied.

Petitioner's motion for relief under 28 U.S.C. § 2254 (Doc. 1), request to proceed in forma pauperis, request for an evidentiary hearing, request for appointed counsel and Certificate of Appealability under 28 U.S.C. § 2253 are hereby DENIED.

SO ORDERED this 26th day of April, 2006.

 s/ Wesley E. Brown
Wesley E. Brown, Senior U.S. District Judge